Appellate Court Case No. 26-1853

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**MARK CLIFFORD SYKES,**

*Plaintiff/Appellant*,

vs.

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT *et al.*,**

*Defendants/Appellees,*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA (LAS VEGAS)
THE HONORABLE RICHARD F. BOULWARE, II
District Court Case No. 2:21-cv-01479-RFB-DJA

**ANSWERING BRIEF**

LYSSA S. ANDERSON
KAEMPFER CROWELL
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
Telephone: (702) 792-7000
Facsimile: (702) 796-7181

**Attorneys for Defendants/Appellees**
**LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND JOSEPH
SMITH**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, Las Vegas Metropolitan Police Department and Joseph Smith ("Appellees") do not have parent corporations, subsidiaries, or affiliates that have issued shares to the public.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT......................................................I

TABLE OF AUTHORITIES ............................................................... IV

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW.............1

SUMMARY OF THE ARGUMENT ....................................................2

COUNTERSTATEMENT OF THE CASE..........................................3

    I.    Factual Background.............................................................3

        A.    Officer Hunt Calls Sergeant Joseph Smith, Who Was Not on Scene, About Appellant's Request for a Supervisor and the Basis for the Traffic Stop..........................................5

        B.    Appellant Calls the 9-1-1 Emergency Line to Protest Officer Hunt's Actions. ...........................................................6

        C.    Officer Raymond Barrett Arrives on Scene to Assist Officer Hunt...........................................................................6

        D.    Officer Hunt Calls Sergeant Smith to Report that Appellant Called 9-1-1 On Scene During the Traffic Stop, To Which Smith Instructs Hunt to Arrest Appellant for Misusing 9-1-1....7

        E.    Officer Hunt Transports Appellant to CCDC for Booking. .......7

        F.    Appellant Is Released from CCDC One Day after Arrest..........8

        G.    LVMPD's Internal Affairs Bureau Reviews an Internal Complaint filed by Appellant and Finds that Hunt Did Not Violate Appellant's Rights........................................................8

    II.    Procedural History...........................................................9

        A.    The District Court Grants Summary Judgment to Appellees…10

        B.    Appellant Files a Motion to Vacate the Court's Entry of Summary Judgment. ...............................................12

        C.    Appellant Files a Notice of Appeal to Challenge the District Court's Entry of Summary Judgment, But He Does Not Challenge the District Court's Earlier Dismissal of Officer Hunt for Lack of Service nor the Orders Screening His Complaint, First Amended Complaint, and Second Amended Complaint. 12

**STANDARD OF REVIEW** ........................................................................**13**

**ARGUMENT** ................................................................................................**13**

I.   **The District Court Correctly Granted Summary Judgment in Sergeant Smith's Favor with Appellant's "Count I" Arising under 42 U.S.C. § 1983 Because Smith Lawfully Authorized the Traffic Citation and Arrest of Appellant Based on Information Told to Him by an On-Scene Officer.** ..........................................**13**

    A.   This Court's Appellate Review Concerns Sergeant Smith's Actions, Not Officer Hunt's Actions. ......................................15

    B.   The District Court Had the Authority to Rule on the Legal Issues of Reasonable Suspicion and Probable Cause at the Summary Judgment Stage.......................................................16

    C.   Body Camera Footage Establishes that Sergeant Smith Had Reasonable Suspicion to Authorize a Traffic Citation for Appellant and Probable Cause to Authorize an Arrest of Appellant Based on Information Reported by an Officer On Scene. ..................................................................................18

    D.   Qualified Immunity Shielded Sergeant Smith from Appellant's Count I Even if Appellant Had an Actionable Claim under 42 U.S.C. § 1983 against Smith...................................................25

II.  **The District Court Correctly Granted Summary Judgment with Appellant's Count III Because No Evidence Supported a Claim for Intentional Infliction of Emotional Distress.** ...........................**26**

    A.   No Conduct Was Extreme or Outrageous................................28

    B.   Appellant Did Not Come Forward with Evidence of Extreme Emotional Distress as Required under Nevada Law. ...............28

III. **The District Court Correctly Held that No Evidence Supported an Actionable Claim under Title VI of the Civil Rights Act against LVMPD.** ..........................................................................................**30**

IV.  **Appellant's Opening Brief Cannot Present a *Monell* Claim against LVMPD Arising under 42 U.S.C. § 1983 Because It Was Not Pleaded In His Operative Second Amended Complaint at the Time of Summary Judgment.**............................................................**33**

iii

**V.** **The District Court Correctly Exercised Its Discretion When Denying Appellant Leave to Submit Surreplies and In Its Consideration of Arguments at the February 21, 2025 Hearing Regarding Appellees' Motion for Summary Judgment.** ...............35

**VI.** **The District Court Correctly Rejected Appellant's Attempts to Rely on the Thirteenth Amendment.** ................................................35

**VII.** **Appellant Incorrectly Cites the Seventh Amendment as a Basis to Overturn Summary Judgment** ..........................................................37

**CONCLUSION** ....................................................................................................37

**STATEMENT OF RELATED CASES** ..................................................................38

## TABLE OF AUTHORITIES

### Cases

*Acosta-Huerta v. Estelle*,
  954 F.2d 581 (9th Cir. 1992) ..................................................................................35

*Act Up!/Portland v. Bagley*,
  988 F.2d 868 (9th Cir. 1993) ..................................................................................17

*Aquino v. Cnty. of Monterey Sheriff's Dep't*,
  No. 5:14-cv-03387-EJD, 2016 WL 5946867 (N.D. Cal. Sept. 29, 2016) ...........31

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...............................................................................................25

*Banks v. Albertsons Deal & Delivery*,
  No. 2:23-cv-01629-GMN-DJA, 2024 WL 1701919 (D. Nev. Apr. 19, 2024)....31

*Cameron v. Craig*,
  713 F.3d 1012 (9th Cir. 2013) ...............................................................................23

*Chehade Refai v. Lazaro*,
  614 F. Supp. 2d 1103 (D. Nev. 2009) ....................................................................27

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ...............................................................................................33

*Corona v. Time Warner Cable, Inc.*,
  2014 U.S. Dist. LEXIS 186736, 2014 WL 11456535 (C.D. Cal. Oct. 16, 2014) ................................................................................................36

*Crowley v. Bannister*,
  734 F.3d 967 (9th Cir. 2013)................................................................15

*Dillard Dep't Stores, Inc. v. Beckwith*,
  989 P.2d 882 (Nev. 1999) (en banc) ...................................................27

*Graham v. Connor*,
  490 U.S. 386 (1989)..............................................................................14

*Indep. Towers of Wash. v. Washington*,
  350 F.3d 925 (9th Cir. 2003)................................................................35

*John v. City of El Monte*,
  515 F.3d 936 (9th Cir. 2008).................................................................22

*Kelley v. City of Henderson*, No. 2:15-cv-02204-APG-VCF,
  2017 WL 2802732 (D. Nev. June 27, 2017).........................................28

*L. F. v. Lake Washington Sch. Dist. #414*,
  947 F.3d 621 (9th Cir. 2020).................................................................13

*Larsen v. City of Henderson*, No. 2:06-cv-00153-RLH-RJJ, 2007 WL 1703459 (D. Nev. June 11, 2007) ....................................................................................29

*Lee v. Stone*, No. 1:20-CV-00186-BLW, 2024 U.S. Dist. LEXIS 81522 (D. Idaho May 3, 2024) ...................................................................... 20, 24

*Mason v. Las Vegas Metro. Police Dep't*,
  754 F. App'x 559 (9th Cir. 2019) .........................................................17

*McKenzie v. City of Milpitas*,
  738 F.Supp. 1293 (N.D. Cal. 1990) .....................................................32

*Miller v. Jones*,
  970 P.2d 571 (Nev. 1998) .....................................................................30

*Miller-Cunningham v. MacAllister*,
  No. CV 17-02098-PHX-JAT, 2019 U.S. Dist. LEXIS 39210 (D. Ariz. Mar. 12, 2019)..............................................................................................23

*Nieves Martinez v. United States*,
  997 F.3d 867 (9th Cir. 2021)............................................................ 18, 24

*O'Doan v. Sanford*,
  991 F.3d 1027 (9th Cir. 2021) .................................................................18

*Peck v. Montoya*,
  51 F.4th 877 (9th Cir. 2022) ..................................................................15

*Quinn v. Thomas*,
  No. 2:09-cv-00588-KJD, 2010 WL 3021795 (D. Nev. July 28, 2010) ...............29

*Riggs v. Nye Cty.*,
  No. 2:17-cv-02627-APG-VCF, 2019 WL 1300074 (D. Nev. Mar. 21, 2019) ....27

*Scott v. Harris*,
  550 U.S. 372 (2007) ..............................................................................17

*Columbia v. Wesby*,
  583 U.S. 48 (2018) ................................................................................25

*Sekerke v. City of Nat'l City*,
  No. 21-56062, 2023 U.S. App. LEXIS 2047  (9th Cir. Jan. 26, 2023)................34

*Shafer v. Cty. of Santa Barbara*,
  868 F.3d 1110 (9th Cir. 2017) ................................................................25

*Smith v. Dockery*,
  No. 2:20-cv-02261-CDS-BNW, 2023 WL 2434817 (D. Nev. Mar. 9, 2023).....21

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ................................................................15

*Szajer v. City of Los Angeles*,
  632 F.3d 607 (9th Cir. 2011).................................................................13

*Taylor v. List*,
  880 F.2d 1040 (9th Cir. 1989) ................................................................15

*Triton Energy Corp. v. Square D Co.*,
  68 F.3d 1216 (9th Cir. 1995).................................................................31

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2012) .................................................................17

vi

*United States v. Arvizu,*
    534 U.S. 266 (2002) ..................................................................................19

*United States v. Choudhry,*
    461 F.3d 1097 (9th Cir. 2006) ................................................................19

*United States v. Hensley,*
    469 U.S. 221 (1985) ..................................................................................23

*United States v. Magallon-Lopez,*
    817 F.3d 671 (9th Cir. 2016) ...................................................................18

*United States v. Miranda-Guerena,*
    445 F.3d 1233 (9th Cir. 2006) ........................................................... 19, 20

*Vanegas v. City of Pasadena,*
    46 F.4th 1159 (9th Cir. 2022) ..................................................................18

**Statutes**

Nev. Rev. Stat. § 484A.7035 .......................................................................21

Nev. Rev. Stat. § 484A.7043 .......................................................................21

Nev. Rev. Stat. § 484D.110 .........................................................................21

Nev. Rev. Stat. §207.245 .............................................................................23

Nev. Rev. Stat. §207.245(6)(a) ....................................................................23

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the District Court correctly grant summary judgment in Sergeant Smith's favor on Appellant's Count I, arising under 42 U.S.C. § 1983, when undisputed evidence establishes that Smith, who was not present at the scene of arrest, authorized a traffic citation and arrest of Appellant based on the on-scene officer's contemporaneous report that Appellant misused the 911 emergency call system for the non-emergency purpose of protesting the ongoing traffic stop and had been driving at night with a headlight out?

2.     Did the District Court correctly grant summary judgment in Sergeant Smith's favor on Appellant's claim of intentional infliction of emotional distress because evidence established that Smith authorized Appellant's arrest based on information about Appellant using an emergency call line for a non-emergency purpose, nothing in the record indicated that Smith acted with the intent to cause emotional distress to Appellant, and Appellant did not present evidence that he suffered severe and extreme emotional distress from the incident?

3.     Did the District Court correctly grant summary judgment in LVMPD's favor on Appellant's claim arising under Title VI of the Civil Rights Act because no evidence showed that LVMPD employed racially discriminatory policies or procedures and no evidence indicated racial animus as a factor for the traffic stop or arrest of Appellant?

1

**SUMMARY OF THE ARGUMENT**

This case stems from a traffic stop of Appellant Mark Sykes on August 8, 2020, for suspected driving at night without an operating front right headlight. What began as a routine traffic stop turned into Appellant becoming argumentative with the on-scene officer (Officer Hunt) and, ultimately, Appellant calling 9-1-1 while detained on scene to voice his disagreement with the traffic stop and frustration at Officer Hunt.

When Officer Hunt called his supervisor, Appellee Sergeant Joseph Smith—who was not on scene—and told him of Appellant's right headlight not working and Appellant calling 9-1-1 during the stop, Sergeant Smith authorized a traffic citation of Appellant for the headlight violation and arrest of Appellant under Nevada Revised Statute 207.245, which prohibits a person from knowingly using a government emergency phone line for a non-emergency purpose. Moreover, a routine on-scene records check of Appellant revealed that Appellant was a convicted felon who had not registered his current address in Nevada—yet another violation of a Nevada criminal statute.

Following arrest, Appellant filed this lawsuit claiming that the traffic stop occurred without reasonable suspicion, the acting officer unlawfully searched his car, he was arrested without probable cause, and the stop amounted to racial discrimination. He never served Officer Hunt with the summons and complaint.

2

As a result, the only defendants were Sergeant Smith and the Las Vegas Metropolitan Police Department.

The District Court correctly granted summary judgment in Appellees' favor for the legally and factually valid reason that all of Appellant's claims failed on their merits when considering undisputed evidence in the record. Indeed, as to Sergeant Smith, the information that Officer Hunt reported to him over the phone created probable cause for Smith to believe that Appellant had committed a traffic violation and had violated NRS 207.245 by calling 9-1-1 for the non-emergency purpose of merely objecting to the acting officer's stop. The existence of probable cause defeats Appellant's claims against Sergeant Smith as a matter of law.

As to LVMPD, no evidence supported Appellant's allegations of racially discriminatory policies. All the evidence conclusively proved otherwise by showing exhaustive anti-bias training for officers and community programs focused on non-discriminatory policing. No evidence indicated any racial motivations behind the decision to stop, detain, or arrest Appellant.

Because the District Court's grant of summary judgment correctly occurred, this Court should affirm the Judgment in Appellees' favor.

**COUNTERSTATEMENT OF THE CASE**

**I.     Factual Background**

On August 8, 2020, LVMPD police officer Shawn Hunt saw Appellant Mark

3

Sykes driving at night with what appeared to be a non-functioning front right headlight. 3-SER-190–91 (Arrest Report). Officer Hunt turned on his police cruiser's emergency lights to signal Appellant to pull over. Appellant did so in a retail center parking lot. The stop is all captured on Officer Hunt's body camera. Ex. 1 to Mot. Leave to Transmit Physical Exhibit, Body Camera Footage, Video 467-7 (showing footage from Officer Hunt's camera).[1]

Officer Hunt approached Appellant's door and stated the reason he pulled him over as being a headlight out. *Id.* Appellant responded by opening his car door and, as he got out, toggling the steering control for his lights to turn them off then on. This toggling appeared to restart the front right headlight. Appellant then walked to the front of his car and directed Officer Hunt to look at the light. *Id.* at 1:00–1:10. Officer Hunt explained that the right headlight initially was not on and asked Appellant to readjust the steering control to how it was before the stop to confirm that the light was not working. *Id.* at 1:10–1:15.[2]

Appellant toggled his headlight one more time, but the light did not change.

---

[1] The initial thirty seconds of body camera footage do not have sound, as is normal for the AXON system. At the thirty-second mark, recorded audio starts.

[2] Appellant's criminal history reflects a misdemeanor citation from June 3, 2018, for "Headlamps not Illuminated When Required" in Henderson, and a "Rear License Plate Lamp Violation" in July 2018. 3-SER-230–31.

*Id.* 1:20–1:40.  Appellant then asked, "are we good"? *Id.*  Officer Hunt responded that he wanted Appellant to stand in front of his police vehicle to identify him. Appellant asked Officer Hunt to call his "Watch Commander." *Id.*  Officer Hunt said he would do so; but Appellant, rather than following Officer Hunt's instruction to stand near the police vehicle, tried to get back into Appellant's own car. *Id.* at 1:40–2:30.  Appellant argued with Officer Hunt rather than following the instruction to stand in front of the police car, and Appellant continued protesting the reason for the stop. *Id.* at 1:40–8:30.

### A.  Officer Hunt Calls Sergeant Joseph Smith, Who Was Not on Scene, About Appellant's Request for a Supervisor and the Basis for the Traffic Stop.

After seven minutes of arguing with Officer Hunt, Appellant identified himself as Mark Sykes. *Id.* at 8:00–1:00.  Officer Hunt then returned to his police car to call his supervisor, Sergeant Joseph Smith,[3] and run a background check for Appellant's name. *Id.* at 10:00–11:30.

Officer Hunt reported to Sergeant Smith by phone call that he had pulled Appellant over because Appellant's right headlight was out and Appellant demanded a supervisor. *Id.* at 12:00–12:15.  Sergeant Smith instructed Officer

---

[3] During Appellant's deposition, he affirmed that Sergeant Smith was the same as "officer Smith" named in the Second Amended Complaint. 3-SER-364.

Hunt to "give him a ticket," and Sergeant Smith said he could not report to the scene because he was handling other duties at a different location. *Id.* at 12:30–12:36.

**B. Appellant Calls the 9-1-1 Emergency Line to Protest Officer Hunt's Actions.**

After Officer Hunt ended the call with Sergeant Smith, he returned to Appellant and found that Appellant had called 9-1-1 to voice his disagreement with Officer Hunt's actions and was actively talking with the dispatcher. *Id.* at 13:00–14:30 (showing Appellant saying, "I've got 9-1-1 on the phone"). Officer Hunt then asked Appellant his current address, to which Appellant continued to argue and responded, "it's on file." *Id.* After minutes of arguing with Officer Hunt, Appellant stated that his address was "448 Hunter Drive." *Id.* at 14:40–15:00, 15:25–15:35.

**C. Officer Raymond Barrett Arrives on Scene to Assist Officer Hunt.**

After eighteen minutes into the stop, Officer Raymond Barrett arrived on scene to assist with the stop. *Id.* at 18:00–18:30; Ex. 3 to Mot. Leave to Transmit Physical Exhibit, Body Camera Video 467-5 (showing footage from Officer Barrett's camera). *See also* 3-SER-195 (showing the body camera identification log). Officer Barrett handcuffed Appellant as Appellant walked back to his own car and shouted about Officer Hunt pulling him over for a "goddamn head light."

6

Ex. 3 to Mot. Leave to Transmit Physical Exhibit, Body Camera Video 467-5. Officer Barrett then explained to Appellant how he had committed a crime by misusing 9-1-1. *Id.*

**D. Officer Hunt Calls Sergeant Smith to Report that Appellant Called 9-1-1 On Scene During the Traffic Stop, To Which Smith Instructs Hunt to Arrest Appellant for Misusing 9-1-1.**

As Officer Barrett applied handcuffs to Appellant, Officer Hunt called Sergeant Smith for the second time to report that Appellant called 9-1-1 to complain of Officer Hunt's actions and to demand a supervisor. Ex. 1 to Mot. Leave to Transmit Physical Exhibit, Body Camera Video 467-7 at 19:10–19:40. Smith instructed Officer Hunt to arrest Appellant for misusing 9-1-1. *Id.* Officer Hunt then informed Appellant that he would be going to jail for misusing 9-1-1. *Id.* at 19:40–19:50; 3-SER-365.

**E. Officer Hunt Transports Appellant to CCDC for Booking.**

Officer Hunt transported Appellant from the scene to the Clark County Detention Center ("CCDC"). Ex. 2 to Mot. Leave to Transmit Physical Exhibit, Body Camera Video 467-6 (showing Officer Hunt's body camera footage when taking Appellant to CCDC). Appellant received routine medical screening during booking, which noted his aggression toward staff but no physical harm or trauma to Appellant. 3-SER-197–200 (showing the Wellpath Medical Records for medical pre-screening). *See also* 3-SER-206–08 (showing the Inmate Observation Sheet).

7

Appellant's arrest ultimately occurred for two reasons: (1) misusing an emergency line in violation of Nevada Revised Statute 207.245; and (2) failing to register a current address as a felon, in violation of Nevada Revised Statute 179C.200. 3-SER-190–91. Appellant's criminal history reflects prior charges for failing to register as a felon in violation of NRS 179C.200. 3-SER-241–55 (showing charges for "FAIL BY CONV PERS TO COMPLY W/NRS 1790C REQS"); 3-SER-259–61.

**F.      Appellant Is Released from CCDC One Day after Arrest.**

The presiding Justice Court found probable cause for the charges on August 9, 2020, 3-SER-202, but the Clark County District Attorney ultimately declined to proceed with charges against Appellant. Appellant was released from CCDC the day after the arrest. 3-SER-204 (showing the "Housing History").

**G.      LVMPD's Internal Affairs Bureau Reviews an Internal Complaint filed by Appellant and Finds that Hunt Did Not Violate Appellant's Rights.**

Appellant filed an internal affairs complaint against Officer Hunt. As is the standard for citizen complaints, LVMPD's Internal Affairs Bureau ("IAB") routed the complaint and reviewed the allegations alongside the available evidence. 3-SER-210–13. IAB held that Appellant's complaints were not valid and closed the complaint. *Id.* ("Hunt was not threatening to the COM [Mr. Sykes], the COM was simply non compliant and uncooperative. Officer Hunt was professional and his

actions were lawful and IAb observed no policy violation.").

## II.   Procedural History

Appellant filed this lawsuit one year after the at-issue traffic stop and arrest. His Second Amended Complaint, 3-SER-404–36, later became the governing document up until the District Court's entry of summary judgment and closure of the case.  This pleading named four defendants: the Las Vegas Metropolitan Police Department; Officer Hunt; Officer (Sergeant) Smith; and the National Crime Information Center ("NCIC").

The Second Amended Complaint brought four "Counts" in total: (1) violation of the Fourth Amendment protection against unreasonable searches and seizures and Fourteenth Amendment through deprivation without due process of law, against "Defendants Officer S. Hunt and Officer Smith"; (2) Libel under Nevada Revised Statute 200.510(1), against NCIC; (3) Intentional Infliction of Emotional Distress under Nevada law, against Officer Hunt and Sergeant Smith; and (4) violation of Title VI of the Civil Rights Act "pursuant to 42 U.S.C. § 2000d *et. seq.*," against LVMPD.

On May 16, 2024, Magistrate Judge Albregts entered a Report and Recommendation ("R&R") to dismiss Officer Hunt without prejudice because Appellant had not accomplished service of process against Officer Hunt in the three years since this case began. 3-SER-370.  The deadline for Appellant to file an

9

Objection to the R&R expired fourteen days later. He did not file an Objection. The District Court later reviewed the R&R and adopted it in a separate decision. 2-SER-84–85.

As a result, only two defendants were left in this case at the summary judgment stage: the Las Vegas Metropolitan Police Department, and Sergeant Smith.

### A.     The District Court Grants Summary Judgment to Appellees.

After full briefing and a February 21, 2025 hearing, the District Court entered a written Order granting summary judgment in Appellees' favor. 1-SER-3–10. The Court's decision centered on the merits of Appellant's claims.

First, the District Court held that Sergeant Smith's action in authorizing a traffic citation against Appellant was lawful based on the information reported to him by Officer Hunt of Appellant having a headlight out while driving. The District Court recognized how, even if Appellant disputed the headlight being out, Sergeant Smith could rely on Officer Hunt's statement since Sergeant Smith was not actually on scene.

Next, the District Court held that Sergeant Smith's action in authorizing Appellant's arrest was lawful. Again, the District Court held that Sergeant Smith could rely on Officer Hunt's statement that Appellant called 9-1-1 for the non-emergency purpose of voicing his frustration at Officer Hunt. The District Court

10

recognized how this would violate Nevada Revised Statute 207.245 as a matter of law, which renders it a crime to call an emergency service line "when no actual or perceived emergency exists;" Nevada law defines an emergency in this context as "a situation in which immediate intervention is necessary to protect the physical safety of a person or others from an immediate threat of physical injury or to protect against an immediate threat of severe property damage." Nev. Rev. Stat. § 207.245(6)(a).

The District Court held that, based on Sergeant Smith's actions being lawful, Appellant's claims for false arrest and intentional infliction of emotional distress against Sergeant Smith failed as a matter of law. The District Court accordingly granted Sergeant Smith summary judgment on those claims.

Then, for Appellant's claim against LVMPD arising under Title VI, the District Court held that "nothing in the record" gave support for Appellant's allegation that LVMPD had discriminatory policies. To the contrary, the record showed that Officer Hunt did not use any racially derogatory names against Appellant, and there was not evidence of racial motive behind the on-scene officers' actions or those of Sergeant Smith. For these reasons, the District Court entered summary judgment in LVMPD's favor. The Clerk of Court officially entered Judgment on April 8, 2025. 1-SER-2.

11

**B.      Appellant Files a Motion to Vacate the Court's Entry of Summary Judgment.**

On April 25, 2025, Appellant filed a Petition citing Federal Rules of Civil Procedure 59(e) and 60(b), arguing that the District Court's grant of summary judgment was "void." 2-SER-62–76.  Appellant repeated his same arguments that appeared during briefing on summary judgment about his belief that the detention and arrest of him violated the Constitution, as well as new arguments citing the Thirteenth Amendment.

After briefing, the District Court entered a Minute Order denying Appellant's Petition under FRCP 59 and 60.  The District Court noted how Appellant's Petition had tried to insert a "novel Thirteenth Amendment claim" that had not been brought earlier in the case.  The District Court denied his Petition in full and upheld the Order granting summary judgment. 1-SER-11–12.

**C.      Appellant Files a Notice of Appeal to Challenge the District Court's Entry of Summary Judgment, But He Does Not Challenge the District Court's Earlier Dismissal of Officer Hunt for Lack of Service nor the Orders Screening His Complaint, First Amended Complaint, and Second Amended Complaint.**

Appellant's Notice of Appeal lists the District Court's grant of summary judgment to Sergeant Smith and LVMPD as well as the District Court's denial of Appellant's Petition seeking to vacate that decision.  Appellant's Notice of Appeal did not list earlier Orders as being at issue. 4-SER-556.

12

For example, Appellant's Notice of Appeal does not list the Order dismissing Officer Hunt. *Id.* (not listing the Order, 2-SER-84, adopting the recommendation for dismissal of Officer Hunt nor the Report and Recommendation, 3-SER-370). Appellant's Opening Brief does not challenge the grounds for the District Court's dismissal of Officer Hunt, either.

Nor does Appellant's Notice of Appeal challenge the District Court's decisions screening his pleadings to determine if any claims were not plausibly stated. 3-SER-445, 4-SER-455, 540. His Opening Brief does not, either.

## STANDARD OF REVIEW

This Court uses a de novo standard of review for the grant of summary judgment. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). This Court reviews "the evidence in the light most favorable to the nonmoving party" then determines whether there are "any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *L. F. v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020).

## ARGUMENT

I.  **The District Court Correctly Granted Summary Judgment in Sergeant Smith's Favor with Appellant's "Count I" Arising under 42 U.S.C. § 1983 Because Smith Lawfully Authorized the Traffic Citation and Arrest of Appellant Based on Information Told to Him by an On-Scene Officer.**

The first issue on appeal is the grant of summary judgment on Appellant's

13

"Count I" in the Second Amended Complaint. Count I arose under 42 U.S.C. § 1983 by alleging violations of the Fourth and Fourteenth Amendments.[4]

Count I named only Sergeant Smith and Officer Hunt as defendants, not LVMPD. 3-SER-416 (listing, in the Title to Count I, "Pursuant to 42 U.S.C. § 1983 against Defendants Officer S. Hunt, and Officer Smith"). Because the District Court dismissed Officer Hunt prior to summary judgment due to Appellant's failure to timely serve him, the District Court's summary judgment analysis—just as is this Court's review on appeal—concerns solely whether Count I was actionable against Sergeant Smith.[5]

---

[4] Although Appellant cited the Fourth and Fourteenth Amendments as the basis for Count I, the Fourth Amendment supplies the applicable standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").

[5] The District Court's dismissal of Officer Hunt prior to summary judgment is not an issue in this appeal. Appellant did not list the dismissal Order in his Notice of Appeal as being one of the challenged decisions, and his Opening Brief does not make any argument as to whether (or how) the District Court erred by dismissing Officer Hunt based on Appellant's failure to timely serve him with process for years after initiating this case, despite extensions of time given by the District Court to do so, and despite Appellant being repeatedly put on notice by the District Court of its intent to dismiss Officer Hunt if not served. 4-SER-557 (showing the docket, which contains extensions of time to serve Officer Hunt at ECF Nos. 35, 54, 64, a notice of intent to dismiss Officer Hunt if not served, ECF No. 68). Fed. R. App. P. 3(c) (requiring that all orders being challenged on appeal be listed in the

**A.   This Court's Appellate Review Concerns Sergeant Smith's Actions, Not Officer Hunt's Actions.**

By basing Count I in § 1983, Appellant could not pursue liability against Sergeant Smith merely for Sergeant Smith being on the same "team" as another official who Appellant alleges committed some form of wrongful conduct. *Peck v. Montoya*, 51 F.4th 877, 890 (9th Cir. 2022) (explaining that "liability may not be imposed based on a 'team effort' theory"); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) ("Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."). Instead, to have an actionable Count I against Sergeant Smith, Appellant must have come forward with evidence of Sergeant Smith personally violating Appellant's constitutional rights, instructing another official to violate Appellant's rights, or actually knowing of another officer violating Appellant's rights but not stepping in to prevent the violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

The District Court's Order on summary judgment correctly recognized this

---

Notice of Appeal); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

legal standard and applied it when ruling in Sergeant Smith's favor by focusing purely on what actions Sergeant Smith took based on information known to Sergeant Smith at the time, not actions by Officer Hunt that Sergeant Smith did not know about or direct. 1-SER-6–9. Conversely, Appellant's Opening Brief continues to miss the point, as he did at the District Court level, by arguing about irrelevant issues such as whether Officer Hunt had a valid basis to initiate the traffic stop of Appellant or unreasonably prolonged the stop. Those issues are not on appeal, nor are those issues a basis to reverse the Court's grant of summary judgment to Sergeant Smith.

> **B.** **The District Court Had the Authority to Rule on the Legal Issues of Reasonable Suspicion and Probable Cause at the Summary Judgment Stage.**

In addition to properly focusing on Sergeant Smith's actions, the District Court correctly recognized that its role at the summary judgment stage included determining if undisputed evidence supported legal justification for Sergeant Smith's authorization of both a traffic citation against Appellant and the Appellant's arrest. Appellant's Opening Brief errs as a matter of law when arguing that the legal issue of reasonable suspicion and probable cause were "triable issue[s]" reserved for the jury. Opening Brief at 7–8.

Ninth Circuit precedent has long recognized that district courts have the authority to decide legal questions such as probable cause to arrest at the summary

16

judgment stage. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) ("[T]he question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question,' that should be determined by the district court at the earliest possible point in the litigation." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The District Court properly applied that precedent when ruling, as discussed below, that video evidence and undisputed facts established that Sergeant Smith's actions in authorizing both a traffic citation against Appellant and the arrest of Appellant were legally justified. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("The facts are undisputed, so the existence of probable cause is a question of law"). *See also Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").[6]   Accordingly, Appellant's Count I against Sergeant Smith

---

[6] *See also Mason v. Las Vegas Metro. Police Dep't*, 754 F. App'x 559, 560 (9th Cir. 2019) ("Where, as here, there is a videotape of the event in question, we must 'view[ ] the facts in the light depicted by the videotape.'" (citing *Scott*, 550 U.S. at 380–81); *Vanegas v. City of Pasadena*, 46 F.4th 1159, at 1165 (9th Cir. 2022)

failed as a matter of law at the summary judgment stage.[7]

### C. Body Camera Footage Establishes that Sergeant Smith Had Reasonable Suspicion to Authorize a Traffic Citation for Appellant and Probable Cause to Authorize an Arrest of Appellant Based on Information Reported by an Officer On Scene.

Probable cause is "a fluid concept" that "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021). The existence of probable cause depends on "the totality of the circumstances known to the officers at the time of arrest." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022); *Nieves Martinez v. United States*, 997 F.3d 867, 879 (9th Cir. 2021) (discussing how probable cause exists if "officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe

---

(considering the information undisputedly known to officers on scene and holding, as a matter of law, that probable cause supported the arrest because "the officers learned of enough facts to believe that Vanegas had violated § 415(2)").

[7] As an alternative ground to affirm the District Court's decision as to Count I, Appellant's undisputed failure to register his then-address despite being a convicted felon violated Nevada law. This basis to conduct an arrest undermines in full Appellant's false detention and false arrest theory, even if other criminal charges were not supported by probable cause. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) ("[I]f the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense as to which probable cause was lacking.").

that an offense has been or is being committed by the person being arrested").

Reasonable suspicion to issue a traffic citation is an even less demanding standard than probable cause. *United States v. Choudhry*, 461 F.3d 1097, 1102 (9th Cir. 2006); *United States v. Miranda-Guerena*, 445 F.3d 1233, 1237 (9th Cir. 2006). It requires only that the "totality of the circumstances" known to an officer give a "particularized and objective basis" for suspecting wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Here, as the District Court correctly recognized, undisputed evidence at the summary judgment stage established that Sergeant Smith's involvement with Appellant amounted to two narrow actions: "(1) he took a call from Officer Hunt and authorized the issuance of a citation, and (2) he took another call from Officer Hunt and authorized an arrest." 1-SER-7 (recognizing that Sergeant Smith "is not alleged to have participated in the stop, arrest, or search of the vehicle beyond these actions."). Sergeant Smith lawfully conducted both actions when considering the information known to him at the time.

Body camera footage established that Sergeant Smith instructed Hunt to give Appellant a citation based on the straightforward information that Hunt gave to Sergeant Smith seconds earlier: Hunt personally saw that Appellant had a headlight out while Appellant was driving at night, leading to the traffic stop. Ex. 1 to Mot.

19

Leave to Transmit Physical Exhibit, Body Camera Video 467-7 at 0:00 to 3:00; Nev. Rev. Stat. § 484D.110 (requiring every motor vehicle, other than a motorcycle or moped, to "be equipped with at least two headlamps with at least one on each side of the front of the motor vehicle, which headlamps shall comply with the requirements and limitations set forth in this chapter"); Nev. Rev. Stat. § 484A.7035 (authorizing traffic citations); Nev. Rev. Stat. § 484A.7043 (defining potential penalties). Sergeant Smith could rely on Hunt's reported information alone as a basis to lawfully authorize a citation. *See United States v. Miranda-Guerena*, 445 F.3d 1233, 1237 (9th Cir. 2006) (discussing how the Fourth Amendment "allows reasonable suspicion to be based on reports from third parties, including other law enforcement agencies," and "[i]n this case, the information Deputy Davila received from Officer Hammarstrom was based on reasonable suspicion: the officer's personal observation of the traffic violations.").[8]

---

[8] Even when considering Appellant's allegation that Officer Hunt inaccurately reported a non-working headlight on Appellant's car, Appellant's claim still cannot exist as to Sergeant Smith because Smith had no reason to believe that Officer Hunt falsely reported information at the time. *Lee v. Stone*, No. 1:20-CV-00186-BLW, 2024 U.S. Dist. LEXIS 81522, at *14 (D. Idaho May 3, 2024) ("And even assuming the Stones were not truthful in reporting the crime to Lakey, there are no facts supporting an inference that Deputy Lakey knew or should have known that to be so.").

Moreover, Appellees do not concede that Officer Hunt's report was inaccurate, and it would be an error to analyze summary judgment under the

Next, Sergeant Smith acted with probable cause to authorize Appellant's arrest based on Officer Hunt's reported information that Appellant called 9-1-1 without an emergency basis during the traffic stop. Nevada Revised Statute 207.245 makes it a gross misdemeanor for a person to knowingly use a government emergency phone line when no actual or perceived emergency exists for that call. Nev. Rev. Stat. 207.245; *Smith v. Dockery*, No. 2:20-cv-02261-CDS-BNW, 2023 WL 2434817, at *5 (D. Nev. Mar. 9, 2023) (discussing how "[t]he statute [NRS 207.245] outlaws calling emergency services 'when no actual or perceived emergency exists.'"). Nevada law defines an emergency for purposes of calling 9-1-1 as, for example, "a situation in which immediate intervention is necessary to protect the physical safety of a person or others from an immediate threat of physical injury or to protect against an immediate threat of severe property damage." Nev. Rev. Stat. 207.245(6)(a).

Here, Officer Hunt detailed facts to Sergeant Smith about how Appellant

---

assumption that Officer Hunt's report was inaccurate. Body camera footage supports Officer Hunt's report as reasonable. When Officer Hunt reported to Appellant that his front right headlight was out, Appellant got out of his car and undisputedly triggered the steering control to toggle his lights off then on. Ex. 1 to Mot. Leave to Transmit Physical Exhibit, Body Camera Footage, Video 467-7. This toggling appears to have restarted what initially was an inactive front right headlight. Regardless, all that remains at issue on summary judgment is what Sergeant Smith knew: according to another officer, Appellant was driving with at least one non-working headlight.

21

called 9-1-1 to merely demand a supervisor. Ex. 1 to Mot. Leave to Transmit Physical Exhibit, Body Camera Video 467-7 at 13:00–14:30, 19:15–40. Undisputedly, Officer Hunt never threatened to use lethal force against Appellant nor severely damage his property. Appellant conceded that Officer Hunt never took out his firearm and never called him derogatory names. 3-SER-264 (in Response to Nos. 3 and 5, Appellant admitting that Officer Hunt "did not take his firearm out of his holster" and "did not call me any derogatory names during the incident"). Body camera footage proves the absence of any actual threat of physical harm to Appellant or his property on scene that would constitute an "emergency" under NRS 207.245.

Calling 9-1-1 as Appellant did—to complain about an acting officers' decision to conduct a traffic stop while still on scene—does not rise to the level of an immediate threat of physical injury or severe property damage when considered in an objective lens, as the law requires when evaluating a civil claim invoking the Fourth Amendment. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (addressing how probable cause "is an objective standard" and reviewed based on information "the officer had at the time of making the arrest"). Plainly stated, 9-1-1 is an emergency line for immediate police assistance to avoid severe harm. It is not an internal affairs reporting line for a citizen to request a supervisor in order to

22

voice disagreement about an officer's traffic stop as the stop is occurring. Non-emergency lines such as 3-1-1 are available for such non-emergency purposes, as is LVMPD's website for filing citizen complaints.

Accordingly, Sergeant Smith could lawfully authorize Appellant's arrest in reliance on the factual information reported to him by Officer Hunt. *United States v. Hensley*, 469 U.S. 221, 231 (1985) ("[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and . . . officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."); *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013) ("While best practices may dictate that the police obtain both sides of a story where practicable, the law simply does not mandate such diligence. Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.") (internal quotations omitted).[9]

---

[9] *See also Miller-Cunningham v. MacAllister*, No. CV 17-02098-PHX-JAT, 2019 U.S. Dist. LEXIS 39210, at *19 (D. Ariz. Mar. 12, 2019) ("Although Plaintiff stated that he did not have a prior felony, these statements do not negate the reasonableness of Defendant's reliance. While it would have been ideal for Defendant to further inquire into the felonies based on Plaintiff's denial, it is not unusual for a suspect to deny guilt, and Defendant's reliance on dispatch and his

23

As further proof that probable cause supported Sergeant Smith's authorization of Appellant's arrest, a justice court held that probable cause existed for Appellant's arrest. 3-SER-202 (stating "Probable Cause Found" on August 9, 2020); *Nieves Martinez v. United States*, 997 F.3d 867, 879 (9th Cir. 2021) ("Moreover, the prior judicial determination that there was probable cause to arrest Nieves Martinez precludes us from revisiting this issue.").

Appellant's arguments on appeal fail as a matter of law, just as they did while made to the District Court. Appellant claims that there is a factual dispute about whether Appellant subjectively "perceived" an "emergency" while calling 9-1-1. The District Court acted within its authority when ruling that no evidence supported a "perceived emergency" for purposes of NRS 207.245 when considering events from an objective perspective and the indisputable body camera footage. *Scott*, 550 U.S. at 380-81. Even if Appellant truly had a personal subjective belief of an emergency, the District Court could still recognize that the information told to Sergeant Smith created at least a "probability" that no

Sergeant's averments that Plaintiff had been convicted of a felony was reasonable given that he had no reason to question the integrity of the information they gave to him."); *Lee v. Stone*, No. 1:20-cv-00186-BLW, 2024 U.S. Dist. LEXIS 81522, at *14 (D. Idaho May 3, 2024) ("And even assuming the Stones were not truthful in reporting the crime to Lakey, there are no facts supporting an inference that Deputy Lakey knew or should have known that to be so.").

24

"emergency" existed for purposes of Nevada law. *See Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (explaining that probable cause is "not a high bar" and deals with "probabilities," not an actual showing of criminal activity); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, (2001).

### D. Qualified Immunity Shielded Sergeant Smith from Appellant's Count I Even if Appellant Had an Actionable Claim under 42 U.S.C. § 1983 against Smith.

The District Court granted summary judgment to Sergeant Smith with Appellant's Count I on the merits. But Appellant's Count I also failed for the independent ground of Sergeant Smith's qualified immunity defense. While the District Court did not have to analyze the alternative basis of qualified immunity to grant summary judgment on Count I, this Court can do so on appeal if it has any concerns about whether Appellant's Count I may be viable on its face.

Qualified immunity shields Sergeant Smith from Count 1 unless Appellant identifies binding case law or a consensus of persuasive authorities holding that the specific circumstances now before the Court previously constituted a violation of an individual's constitutional right to be free from the at-issue conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) ("It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established.") (internal quotations omitted).

25

Stated differently, for Appellant to overcome Sergeant Smith's qualified immunity defense, he must present a "body of relevant case law" analyzing the "particular" facts like those here and holding that the official violated the Fourth Amendment. *See O'Doan*, 991 F.3d at 1039 ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted, which requires a high degree of specificity. . . . [A] body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause.") (cleaned up).

Here, no court has held that actions like Sergeant Smith's under similar circumstances violated the Fourth or Fourteenth Amendments. Thus, even if Appellant had an actionable Count I against Sergeant Smith on the merits, qualified immunity still bars Count I from proceeding against Sergeant Smith. *D.C. v. Wesby*, 583 U.S. 48, 65 (2018) (ordering summary judgment in the officers' favor based on the holding that, "looking at the entire legal landscape at the time of the arrests, [the officers] could have interpreted the law as permitting the arrests here").

## II. The District Court Correctly Granted Summary Judgment with Appellant's Count III Because No Evidence Supported a Claim for Intentional Infliction of Emotional Distress.

Appellant's Count III was for Intentional Infliction of Emotional Distress ("IIED") under Nevada law. He listed only "Hunt and Smith" as defendants to it.

26

3-SER-425.

An IIED claim has three elements: (a) the defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (b) the plaintiff "suffered severe or extreme emotional distress," and (c) the defendant's actions caused the plaintiff to suffer such severe or extreme emotional distress. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc). Extreme and outrageous conduct for purposes of an IIED claim means behavior that goes "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

The District Court held the role of deciding whether at-issue conduct could rise to the level of "extreme" and "outrageous" for purposes of a triable claim. *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009). To make this legal determination in the context of a police officer's conduct, Nevada turns to the Restatement (Second) of Torts § 46 for examples to guide the analysis. *Riggs v. Nye Cty.*, No. 2:17-cv-02627-APG-VCF, 2019 WL 1300074, at *6 (D. Nev. Mar. 21, 2019) (addressing how the Nevada Supreme Court looks to the Restatement for guidance on this type of claim). Examples include "where the officer attempts to extort money by a threat of arrest," or where the officer

27

"attempts to extort a confession by falsely telling the accused her child has been injured in an accident and she cannot go to the hospital until she confesses." *Id.* The core tenet of an IIED claim against a police officer is "extreme abuse" of his or her government position. *Id.*

## A. No Conduct Was Extreme or Outrageous.

Appellant's central allegations with Count III were that he was subject to a traffic stop, search, and arrest without sufficient legal justification and out of racial animus. 3-SER-404–36. But, as the District Court held, the lawful nature of Sergeant Smith's actions undermined Appellant's legal theory against him in full.

In other words, by engaging in lawful actions, Sergeant Smith could not possibly have committed conduct that rose to the level of "extreme and outrageous" for purposes of an IIED claim. So the District Court correctly entered summary judgment in Sergeant Smith's favor with Appellant's Count III. *Kelley v. City of Henderson*, No. 2:15-cv-02204-APG-VCF, 2017 WL 2802732, at \*7 (D. Nev. June 27, 2017) ("Kelley has alleged the detectives erroneously arrested her without probable cause. Without more, she has not alleged an extreme abuse of police power.").

## B. Appellant Did Not Come Forward with Evidence of Extreme Emotional Distress as Required under Nevada Law.

As an alternative ground to grant summary judgment to Sergeant Smith with

28

Appellant's IIED claim, the District Court correctly recognized that Appellant failed to meet his burden at the summary judgment stage of coming forward with evidence that he suffered extreme emotional distress because of at-issue conduct. Summary judgment was proper merely by Appellees pointing to the lack of evidence that Appellant suffered extreme emotional distress. *Quinn v. Thomas*, No. 2:09-cv-00588-KJD, 2010 WL 3021795, at \*6 (D. Nev. July 28, 2010) ("Because Plaintiff has not raised a genuine issue of material fact regarding extreme and outrageous conduct or sufficiently established that he experienced severe emotional distress, the Court grants summary judgment on Plaintiff's IIED claim against LVMPD."); *Larsen v. City of Henderson*, No. 2:06-cv-00153-RLH-RJJ, 2007 WL 1703459, at \*3 (D. Nev. June 11, 2007) (granting summary judgment in the defendants' favor with an IIED claim because "Plaintiff has not submitted any additional or alternative evidence to show that he suffered severe emotional distress").

During discovery, Appellant conceded that he did not seek medical treatment following the arrest. 3-SER-352 ("I have not received any medical treatment as a result of the arrest on August 8, 2020," and "I have no medical documents as a result of the arrest on August 8, 2020"). His medical records from booking immediately after arrest establish that he did not suffer extreme emotional

29

distress or physical injury. 3-SER-197–200 (answering "No" to whether "arrestee experienced any trauma prior to arrival at facility" and "No" to whether "arrestee [has] visible signs of trauma and/or illness").

As a result, Nevada law supported the District Court's entry of summary judgment against Appellant with his Count III arising under Nevada law. *See Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (affirming summary judgment because the plaintiff "presented no objectively verifiable indicia of the severity of his emotional distress").

**III. The District Court Correctly Held that No Evidence Supported an Actionable Claim under Title VI of the Civil Rights Act against LVMPD.**

The last aspect for the District Court's consideration following the grant of summary judgment on Counts I and III was Appellant's Count IV against LVMPD, which alleged that LVMPD violated Title VI of the Civil Rights Act by employing racially discriminatory policies. 3-SER-426–27 (asserting "Count VI" "against LVMPD").[10]  As the District Court held, Appellant failed to come forward with

---

[10] Appellant's only other claim, a "Count II" for "libel, defamation of character" against "Officer S. Hunt" and the "National Criminal Information Center" failed before summary judgment because (1) Officer Hunt had already been dismissed for lack of service, which Appellant does not challenge in this appeal, and (2) the District Court dismissed the National Criminal Information Center based on sovereign immunity through an Order on March 29, 2024, which Appellant does not challenge in this appeal.

any evidence to support that legal theory. That absence of supporting evidence was, alone, enough to grant summary judgment in LVMPD's favor. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("Put another way, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor.").

Besides, all evidence established that Appellant's claim wholly lacked merit. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Banks v. Albertsons Deal & Delivery*, No. 2:23-cv-01629-GMN-DJA, 2024 WL 1701919, at *2 (D. Nev. Apr. 19, 2024).

During discovery, Appellant admitted that Officer Hunt did not use any racially derogatory names toward Appellant and that "no Officers . . . said anything about race or my race during the incident on August 8, 2020." 3-SER-264. Appellant appears to rely solely on his subjective belief that his arrest must have occurred for racially discriminatory reasons because he is a Black male adult. That illogical conclusion is not enough to sustain a claim. *See Aquino v. Cnty. of Monterey Sheriff's Dep't*, No. 5:14-cv-03387-EJD, 2016 WL 5946867, at *14 (N.D. Cal. Sept. 29, 2016) ("A plaintiff's subjective belief that a defendant's

31

conduct is motivated by discriminatory intent is not sufficient to defeat summary judgment."); *McKenzie v. City of Milpitas*, 738 F. Supp. 1293, 1301 (N.D. Cal. 1990) (holding that, where the only evidence was that plaintiffs were black and that the police officers "immediately resorted to the use of force in a situation whose objective context did not call for this force," racially discriminatory intent could not support a section 1981 claim).

And, at the time of Appellant's arrest in 2020—as well as today—LVMPD implemented extensive efforts to prevent biased or discriminatory policing. LVMPD's written policies expressly prohibit discrimination in policing and prohibit biased-based activities:

> Members of this department are expressly prohibited from engaging in biased-based policing activities. Members will not discriminate against any person. Any arrest, detention, interdiction, asset seizure or forfeiture, or other law enforcement action or statement based in whole or in part on the actual or perceived race, ethnicity, color, national origin, gender, age (except in the case of juvenile offenses), religion, culture, disability, sexual orientation, economic status, or other trait of a person or group is strictly forbidden unless such trait is a part of an identifying description of a specific suspect for a specific crime.

3-SER-270–73. Even more, LVMPD requires officers to take advanced training for non-biased policing. 3-SER-275–304. LVMPD works with the community to review and train officers on diversity and cultural competency. 3-SER-306–08; 3-SER-313–49 (discussing how "LVMPD created an Ethics, Values, and

32

Professionalism course, which emphasized fair and impartial policing, and other aspects of constitutional policing").

This expansive evidence of non-discriminatory policing stood undisputed at the summary judgment stage. Even now, Appellant's Opening Brief does not cite any evidence that could support his Count IV. Consequently, this Court should affirm the grant of summary judgment in LVMPD's favor.

## IV. Appellant's Opening Brief Cannot Present a *Monell* Claim against LVMPD Arising under 42 U.S.C. § 1983 Because It Was Not Pleaded In His Operative Second Amended Complaint at the Time of Summary Judgment.

Appellant's Opening Brief contains a section arguing that the Court erred by "resolv[ing]" a "*Monell*" claim against LVMPD based on allegedly "systemic deficiencies" and racially discriminatory policies. Opening Brief at 9. But the only way a *Monell* claim can proceed against LVMPD is through 42 U.S.C. § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). His Second Amended Complaint was the operative pleading at the summary judgment stage, and that pleading did not name LVMPD as a defendant to his "Count I" arising under § 1983. 3-SER-416 (specifying "Count I" is against "Defendants Officer S. Hunt, and Officer Smith").

To the extent Appellant is challenging a District Court Screening Order back in April 2022 that dismissed Appellant's "constitutional claims against LVMPD," there are three reasons why Appellant fails to identify a valid ground to prevail on

33

appeal.

First, Appellant did not identify that dismissal decision in his Notice of Appeal as at issue in this appeal. He, instead, provided specific citations only to the Order granting summary judgment, Judgment, and denial of his Petition to vacate summary judgment, entered "3/30/2025," "4/8/2025," and "3/4/2026." Fed. R. App. P. 3(c).

Second, that earlier Screening Order concerned Appellant's First Amended Complaint and dismissed the *Monell* theory as to LVMPD without prejudice 4-SER-459–50. Appellant's submission of a Second Amended Complaint without this theory against LVMPD effectively waived it. *Sekerke v. City of Nat'l City*, No. 21-56062, 2023 U.S. App. LEXIS 2047, at *2 (9th Cir. Jan. 26, 2023) ("We do not consider Sekerke's Fourth Amendment claim because Sekerke failed to replead it in his operative complaint.").

Third, Appellant has never come forward with allegations or evidence to support a *Monell* theory against LVMPD. Instead, all his pleading allegations amounted to wholly conclusory assertions, and all evidence stood uncontroverted as discussed above in Section III by showing how LVMPD's policies and procedures were constitutional in full, did not involve systemic deficiencies, and were not racially discriminatory.

**V. The District Court Correctly Exercised Its Discretion When Denying Appellant Leave to Submit Surreplies and In Its Consideration of Arguments at the February 21, 2025 Hearing Regarding Appellees' Motion for Summary Judgment.**

Appellant raises a conclusory argument that the District Court erred by not allowing his surreplies at the summary judgment stage. But he fails to identify what arguments were raised in a Reply from Appellees for the first time that required a surreply from him. His conclusory arguments about error, without specific argument, do not properly present the issue for consideration on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Significantly, '[a] bare assertion of an issue does not preserve a claim.'" (citing *DARE America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001)); *Acosta-Huerta v. Estelle*, 954 F.2d 581, 586 (9th Cir. 1992) (applying this standard to a *pro se* litigant).

Regardless, the District Court held a hearing on summary judgment, to which Appellant made his appearance. Appellant cannot manufacture a basis to reverse the District Court's decision with his current approach of merely arguing that the District Court "did not adequately engage the record" or did not specifically address every argument he made. Opening Brief at 10.

**VI. The District Court Correctly Rejected Appellant's Attempts to Rely on the Thirteenth Amendment.**

Appellant argues on appeal that "custodial punishment imposed before

35

conviction" is "unlawful" under the Thirteenth Amendment and Nevada Revised Statute 193.140, which declares that "[e]very person convicted of a gross misdemeanor shall be punished by imprisonment in the county jail for not more than 364 days." Opening Brief at 8. The District Court addressed this argument when Appellant made it after entry of Judgment.

The District Court correctly rejected Appellant's request to vacate the Order granting summary judgment based on this "novel, and legally untenable, claim" raised in his post-judgment motion "that an arrest supported by probable cause amounts to involuntary servitude under the Thirteenth Amendment." 1-SER-12. Case law has long established that an arrestee can remain detained when probable cause to suspect a crime by that person exists, and that a person can be held in custody prior to conviction based on that probable cause standard. Appellant's attempt to re-write the law is not a valid basis to overturn the District Court's entry of Judgment, particularly since Appellant did not raise this theory in his pleadings nor in briefing until after the entry of Judgment. *Corona v. Time Warner Cable, Inc.*, 2014 U.S. Dist. LEXIS 186736, 2014 WL 11456535, at *3 (C.D. Cal. Oct. 16, 2014) ("It is well-settled in the Ninth Circuit that parties generally cannot assert unpled theories for the first time at the summary judgment stage.") (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)).

36

**VII. Appellant Incorrectly Cites the Seventh Amendment as a Basis to Overturn Summary Judgment.**

Finally, Appellant raises a meritless argument that entry of summary judgment in the Defendants' favor violates his Seventh Amendment right to a jury trial. But binding precedent has long recognized the appropriateness of entering summary judgment prior to trial when, as here, the record does not contain triable issues of fact when considering applicable law and undisputed evidence. As a result, this Court can reject in full Appellant's reliance on the Seventh Amendment for this appeal.

**CONCLUSION**

For the reasons stated in this Answering Brief, Appellees respectfully request that this Honorable Court affirm the Orders of the District Court granting summary judgment and denying Appellant's Motion seeking to vacate the judgment.

DATED this 6th day of July, 2026.

Respectfully submitted,

KAEMPFER CROWELL

By: /s/ Lyssa S. Anderson
     LYSSA S. ANDERSON (NV Bar No. 5781)
     1980 Festival Plaza Drive, Suite 650
     Las Vegas, Nevada 89135
     **Attorneys for Defendants/Appellees**

**STATEMENT OF RELATED CASES**

Pursuant to Circuit Rule 28-2.6, Appellees, by and through their counsel of record, state that they are not aware of any related cases pending with the Court.

DATED this 6th day of July, 2026.

Respectfully submitted,

KAEMPFER CROWELL

By: /s/ Lyssa S. Anderson
      LYSSA S. ANDERSON (NV Bar No. 5781)
      1980 Festival Plaza Drive, Suite 650
      Las Vegas, Nevada 89135
      **Attorneys for Defendants/Appellees**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s):** No. 26-1853

I am the attorney for Appellees.

**This brief contains 10,364 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** /s/ Lyssa S. Anderson    **Date** July 6, 2026.
*(use "s/[typed name]" to sign electronically-filed documents)*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 15. Certificate of Service for Electronic Filing**

**9th Cir. Case Number(s)** No. 26-1853

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[X] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

> Mark Clifford Sykes, Appellant-Plaintiff
> P.O. Box 674, Russellville, AR 72801
> email: windsorsykes@yahoo.com

**Description of Document(s)** *(required for all documents)***:**

> **APPELLEES' ANSWERING BRIEF**

**Signature** */s/ Robin Callaway* **Date** July 6, 2026_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*